**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMIE PANUSKY,<br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>*Commissioner of Social Security*,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | NO. 4:26-CV-00006<br><br><br><br>(CAMONI, M.J.) |

**MEMORANDUM OPINION**

Plaintiff Jamie Panusky brought this action under 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for disability under Title II of the Social Security Act. Transcript, doc. 8-2 at 31. She challenges the Administrative Law Judge's (ALJ) assessment of the residual functional capacity. *See* Pl.'s Br., doc. 9 at 5. Because the ALJ's determinations are supported by substantial evidence, the Court will affirm the decision of the Commissioner.

## I. BACKGROUND

### A. Procedural History

On July 22, 2023, Panusky protectively applied for disability benefits under Title II of the Social Security Act, alleging onset of

disability beginning July 19, 2023. Doc. 8-3 at 2. Following an initial denial, Panusky submitted an appeal, requesting a hearing before an ALJ. Doc. 8-4 at 20-21. The ALJ conducted the hearing and determined that Panusky was not disabled. Doc. 8-2 at 31, 38.

Panusky filed a request for review of the ALJ's decision, which the Appeals Council denied. *Id.* at 1-3. The ALJ's decision, therefore, became the final decision of the Commissioner. 42 U.S.C. § 405(g). Pending before this Court is Panusky's action seeking judicial review of the Commissioner's decision. Complaint, doc. 1. This case is fully briefed (docs. 9, 11-12) and ripe for resolution. The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, including entry of final judgment. Doc. 5.

### B. The Disability Determination Process

To determine whether a claimant is disabled under the Social Security Act, an ALJ applies a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). The ALJ assesses whether the claimant:

1. has engaged in substantial gainful activity since the onset of the alleged disability;
2. had a severe medically determinable impairment;

3. suffered from an impairment listed in the regulations as presumptively disabling;
4. could return to his past work; and
5. could perform other available work in the national economy.

*See* § 404.1520(a)(4)(i)–(v).

Between steps three and four, the ALJ also determines whether the claimant's RFC allows the claimant to continue his previous employment. § 404.1520(a)(4)(iv). RFC "is the most [a claimant] can still do despite" impairments. § 404.1545(a)(1). The claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Secretary to show that the claimant can perform substantial gainful employment other than the claimant's past relevant work. *Williams v. Sullivan*, 970 F.2d 1178, 1181 (3d Cir. 1992), citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### C. Issues on Appeal

After following the five-step sequential analysis, the ALJ determined that Panusky "has not been under a disability . . . from July 19, 2023, through the date of this decision." Doc. 8-2 at 31. The ALJ determined at the RFC stage that Panusky has the ability:

> to perform light work as defined in 20 CFR 404.1567(b) except she could stand/walk for four hours, and sit for six hours in an eight-hour workday. She could lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. She could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes or scaffolds. She must avoid concentrated exposure to extreme cold, extreme heat, humidity, noise, vibration, fumes, odors, dust, gases, poor ventilation, and other pulmonary irritants. She must avoid even moderate exposure to hazards. She could understand, remember and carry out simple instructions. She could perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota. She could deal with occasional changes in a routine work setting. She could tolerate occasional interaction with coworkers, supervisors and the public.

*Id.* at 25-26. The ALJ denied Panusky's disability claim at step five, after considering her "age, education, work experience, and residual functional capacity," because he found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 30.

On appeal, Panusky argues that the ALJ erred at step four in evaluating medical opinion evidence and subsequently crafting the RFC. Doc. 9 at 5. The Court, adhering to the deferential standard of review outlined below, will affirm the decision of the Commissioner.

## II. <u>LEGAL STANDARD</u>

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Under the substantial-evidence standard, a court examines an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Substantial evidence does not mean a large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103; *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an

adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). In reviewing the record for substantial evidence, "[n]either the district court nor [the Third Circuit] is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. To reverse the ALJ's findings and decision, the Court "must find that the evidence not only supports [a contrary] conclusion but compels it." *Immigr. & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

The question before the Court, therefore, is not whether Panusky is disabled, but whether the Commissioner's finding that Panusky is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 12-2417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been

held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner."). In determining that question, the Court must evaluate whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision beyond stating bare conclusions. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000).

## III. ANALYSIS

Panusky argues that the ALJ erred at step four in evaluating medical opinion evidence and subsequently crafting the RFC. Doc. 9 at 5. After careful review, the Court finds that the ALJ's decision was supported by substantial evidence and will affirm.

First, Panusky argues that the ALJ's RFC limitation is improper because, despite claiming to rely on the opinion of the state agency level

physicians, the ALJ failed to correctly address a key limitation from the opinions. *Id.* at 7. Specifically, Panusky argues that the ALJ's RFC determination is faulty because "the ALJ did not properly include the limitation to one to two step tasks in the RFC." *Id* at 5. Panusky argues that the decision failed to address the physician's complete opinions on whether Panusky could perform low step command tasks and activities. *Id.* at 8. The Court disagrees.

The ALJ properly assessed and explained Panusky's RFC. First, the ALJ evaluated Panusky's longitudinal mental status evaluations. In doing so, the ALJ considered treatment records, Dr. Theresa Havel's evaluations, and Panusky's testimony, and found that Panusky consistently reported and documented her mood as stable with no acute anxiety. Doc. 8-2 at 27-28. The ALJ next noted that Dr. Havel mentioned that Panusky was cooperative; her behavior was normal; she was able to engage in appropriate eye contact; her thought process was coherent; her speech was fluent; and her attention and concentration were intact. *Id* at 27.

The ALJ also considered the opinion of State agency psychological consultants Douglas Schiller Ph.D. and Faisal Roberts M.D. *Id.* at 29. Dr.

Schiller and Dr. Roberts agreed in their evaluations that Panusky has mild limitations in her ability to understand, remember or apply information, and moderate limitations in her ability to interact with others, and to concentrate, persist, or maintain pace. *Id.* The ALJ assessed that these opinions are mostly consistent with the activity level of the claimant. *Id.* The ALJ, therefore, reasonably concluded that the evidence does not support a greater limitation than those set forth in the RFC. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361-62 (3d Cir. 2011) (explaining that the responsibility of determining a claimant's RFC falls upon the ALJ, rather than medical evaluations, and that the ALJ must consider the medical evidence as a whole).

Second, the ALJ's RFC limitation need not be based on a particular medical opinion. Under the current social security regulations, the ALJ—not the treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361, citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). "As an initial matter, no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight." *Wilkinson v.*

*Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014). Likewise, "The ALJ was not required to adopt all of [a medical provider's] opinion solely because she found the opinion as a whole persuasive[.]" *Id.* Instead, the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner. *Id.*, citing 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c). Contrary to Panusky's argument, the ALJ's RFC assessment does not fail simply because he did not adopt the exact medical opinion of Dr. Schiller. Importantly, the ALJ found Dr. Schiller and Dr. Roberts's medical opinions to be only "somewhat persuasive," as far as they are supported by objective clinical findings, balanced with the reported level of symptomatology. Doc. 8-2 at 29.

Here, the ALJ properly explained his rationale for the RFC assessment, which did not mirror the mild and moderate limitations that Dr. Schiller and Dr. Roberts assessed. However, the ALJ adopted a broader view of the limitations. The ALJ concluded in his assessment that the record at the hearing level, in combination with Panusky's testimony, supports the conclusion that Panusky's mental limitations are moderate. *Id.* The ALJ's RFC assessment, therefore, is supported by substantial evidence.

Finally, Panusky argues that the ALJ failed to articulate good reasons for rejecting the limitations for one- and two-step tasks, and that the failure to include the limitation is not harmless error. *See* doc. 9 at 10 at 10. Again, the Court disagrees; the ALJ did not err by concluding that Panusky could understand, remember and carry out simple instructions and did articulate his reasons for not adopting greater limitations in the RFC. *See* doc. 8-2 at 25, 29. Dr. Schiller opined that Panusky's mental status is indicative of "being able to understand/follow at least basic instructions" and "[h]er mental condition does not preclude involvement in routine, non complex, low step command tasks/activities." Doc. 8-3 at 12. Similarly, Dr. Roberts opined that Panusky "can understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks)." *Id.* at 25. Further, Dr. Roberts assigned the "Not Significantly Limited" label in Panusky's evaluation to the question of whether she was able to "carry out very short and simple instructions." *Id.* Neither limited Panusky to performing only "one- and two-step tasks" *See id.* at 12, 25.

Although a limitation to "performing one- to two-step tasks" would preclude a claimant's ability to perform jobs consistent with reasoning level two, the limitation to "simple instructions" adopted by the ALJ here

does not. *See Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (concluding that jobs at reasoning level two do not contradict the mandate that work be simple, routine and repetitive); *Stash v. Bisignano*, No. 24-2, 2026 WL 208347, at *3-4 (M.D. Pa. Jan. 27, 2026) (collecting cases). The ALJ, therefore, did not err in limiting Panusky to simple work. The ALJ's evaluation of Dr. Schiller and Dr. Roberts's opinions, therefore, is supported by substantial evidence.

On the whole, the ALJ's decision is supported by substantial evidence, and thus the Court will affirm the decision of the Commissioner.

## IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**.

An appropriate order follows.

Date: November 6, 2026

s/*Sean A. Camoni*
Sean A. Camoni
United States Magistrate Judge